# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMAL TAYLOR, | ) |
| Plaintiff, | ) |
| | ) Case No. 16 C 0629 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| E. MICHALEK, MICHAEL A. MAGANA, | ) |
| and JAMES SULLIVAN | ) |
| Defendants. | ) |

### Memorandum Opinion and Order

Jamal Taylor, a prisoner currently housed at the Menard Correctional Center, brings this *pro se* civil rights suit against Defendants, Illinois Department of Corrections ("IDOC") officials, claiming that they retaliated against him for filing a prior lawsuit in violation of his First Amendment rights. Specifically, Taylor alleges that Internal Affairs ("IA") Officers Sullivan and Michalek and Intelligence Coordinator Magana transferred him from the Stateville Correctional Center to the Pontiac Correctional Center ("Pontiac") in retaliation for having filed a previous lawsuit against a Stateville official. The defendants now move for summary judgment. For the reasons set forth herein, that motion [156] is granted in part and denied in part.

**Background**

The following facts are undisputed unless otherwise noted. At the time of the events complained of in this lawsuit, Michalek was an Intelligence Officer at Stateville, Sullivan was an Internal Affairs Officer at Stateville, and Magana was an Intelligence Coordinator for the Illinois Department of Corrections.

In January 2013, Taylor settled two previous lawsuits: 10 CV 3699 and 10 CV 3700.[1] As part of the settlement agreement associated with those cases, he was transferred from Menard to Stateville. The settlement agreement stated, "[n]othing in this agreement shall restrict the IDOC from transferring Plaintiff at any time to another correctional facility for any valid penological reason."

On June 23, 2014, Stateville officials received an anonymous letter indicating that a gun had been "moved" into the D-house and was going to be used to kill a prison guard. The letter indicated that drugs were also being "moved" into the prison. The letter also indicated that "X-Man" carried the drugs on him or had his associate Jamal hold them.

The parties dispute what happened next, and this Court therefore takes the evidence in the light most favorable to Taylor's version of events. On the morning of July 2, 2014, two prison officials strip searched Taylor, searched his cell, and then took him to the "intel office", where he was met by Sullivan and Michalek. The officers questioned him about the anonymous letter and asked him if he knew about it, to which Taylor responded that he did not. The officers indicated to Taylor that the letter was a lie, and asked him if "[he] can give them any information on the lieutenant and the sarge in D house." Plaintiff stated that he did not have any information, and that, even if he did, he would not tell them. When he refused, the officers threatened him by telling him that they knew of his prior lawsuit and how he had gotten to Stateville, and that Taylor was going to have to "pay" for his lawsuit. Following the interview, Taylor was returned to his cell. At 6:00 PM, Taylor was removed from his cell and transferred, on an emergency basis, to the Pontiac Correctional Center.

On the next day, Michalek prepared an investigative ticket for Taylor placing him on investigative status at the Statesville Correctional Center. A subsequently issued Transfer Report

---

[1] *Taylor v. Warden Ramos, et al.*, case no. 10C3699 (N.D. Ill.) (Coleman, J.) (case settled 12/11/2012 and dismissed pursuant to stipulation 1/31/2013); *Taylor v. Lohiser, et al.*, case no. 10C3700 (N.D. Ill.) (Coleman, J.) (case settled 12/11/2012 and dismissed pursuant to stipulation 1/31/2013).

reflected that Taylor had been subject to an emergency transfer based on his investigative status. That morning, Illinois Department of Corrections Deputy Commander Kevin Verble authored an email to Sandra Funk explaining the justification for the transfer:

> [w]e requested that inmates Jamal Taylor, Robert Smith, & Xavier Cox be transferred from Stateville to Pontiac on 7/2/14. The reason we requested such was because last week information was received in form of an anonymous letter that inmate Cox was in possession of a handgun and was planning to harm one our staff members at Stateville. The letter also alleged that inmate Jamal Taylor was very tight with Xavier Cox and that Taylor would hold contraband (drugs) for Cox. Approx 2 days later inmate Robert Smith came forward and told us that in 2012 his cellmate had a handgun in his possession at Stateville. He further indicated that he had hid the weapon in the gym prior to being transferred out. He said that when he got back to Stateville he went to look for the weapon and it was not where he had put it. We ran all three through the interview process and gave 2 lie detector tests. We are at a point in the investigation that we need to remove them from Stateville for operational/investigative concerns. I would like them to go to Pontiac because a northern Illinois State Police polygrapher is scheduled to give each of them an exam next week & it would be a hindrance to move them any further south.

The conditions of confinement at Pontiac were substantially worse than those at Statesville. On July 16, 2014, Michael Magana interviewed Taylor about the anonymous letter and subsequently prepared an Investigation Interview Report based on that conversation. Ultimately, the Department of Corrections concluded that there was not evidence supporting the allegation that Taylor knew about a gun or drugs being smuggled into Stateville, and Taylor was released from segregated housing. He remained incarcerated at Pontiac until April 2017, when he was transferred to Menard Correctional Center.

**Legal Standard**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment

3

must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). The moving party has the initial burden of showing there is no genuine dispute and therefore he is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If the moving party meets this burden, the non-moving party must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460. A genuine dispute is one that could change the outcome of the suit and that is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

**Discussion**

The defendants contend that Taylor's previous lawsuits did not motivate his transfer, that they were not personally involved in the transfer, and that they are protected from Taylor's claims by qualified immunity.

At the summary judgment stage of a First Amendment retaliation action, a plaintiff must present evidence capable of establishing that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) his First Amendment activity was at least a motivating factor in the defendants' decisions. *See Perez v. Fenoglio,* 792 F.3d 768, 783 (7th Cir. 2015) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)); *Laboy v. Pounovich*, No. 13 CV 4882, 2016 WL 4245505, at *5 (N.D. Ill. Aug. 11, 2016) (St. Eve, J.). Once the plaintiff makes a *prima facie* showing by establishing these three elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir. 2013);

4

*Greene v. Doruff,* 660 F.3d 975, 979 (7th Cir. 2011). If the defendants provide legitimate and non-retaliatory reasons for their actions, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason for the action was retaliatory animus. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

The defendants do not appear to dispute that Taylor's prior lawsuits could be considered a protected First Amendment activity or that retaliatory prison transfers can chill protected First Amendment activity. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). The chilling nature of prison transfers is especially apparent when, as here, the transfer is to segregation or a higher security institution. *See, e.g., Wilson v. Rensing*, 2018 WL 784053, at *3 (S.D. Ill. Feb. 8, 2018) (recognizing that a jury could find that the plaintiff suffered a substantial deprivation because the evidence showed he spent one month in segregation followed by one month on increased security status with restricted privileges); *Cullum v. Godinez,* 2016 WL 304865, at *1 (S.D. Ill. Jan. 25, 2016) (concluding that a that a jury could find that the plaintiff suffered deprivation likely to deter future protected activity where the evidence showed plaintiff spent 30 days in a segregation unit, lost gym and yard privileges for 30 days, lost access to commissary privileges for 30 days, had his security level demoted, and lost some personal items). The defendants, however, contend that Taylor has failed to present evidence establishing that the transfer was motivated by his prior lawsuits. But Taylor testified that Michalek and Sullivan told him that his transfer was in retaliation for his prior lawsuit, and affidavits from several of Taylor's fellow inmates report Michalek and Sullivan publicly attributing the transfer to Taylor's past litigation.

5

Based on this testimony, Taylor has established a dispute of material fact as to whether his prior litigation was at least a motivating factor in his transfer. *Perez*, 792 F.3d at 783.

The defendants also contend that they are entitled to summary judgment because they were not personally involved in Taylor's transfer. In order to bring a section 1983 claim against an individual defendant, a plaintiff must identify evidence establishing the defendant's direct, personal involvement in the constitutional deprivation at issue. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Failure to take corrective action or to prevent a constitutional deprivation is not enough; there must be a causal connection or affirmative link between the constitutional violation and the individual defendant. *Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011); *Soderback v. Burnett County, Wis.*, 752 F.2d 285, 293 (7th Cir. 1985).

As an initial matter, the defendants contend that Magana cannot have been involved in the retaliation alleged here because Magana's first interaction with Taylor occurred in an interview almost two weeks *after* he was transferred to Pontiac. Taylor failed to address Magana in his response, but Taylor's complaint and testimony make clear that his claims against Magana stem from Magana's failure to transfer Taylor out of Pontiac or to provide him with better conditions of imprisonment. Taylor has accordingly failed to establish that Magana had a causal role in his allegedly retaliatory transfer. The Court accordingly grants summary judgment in Magana's favor.

With respect to Sullivan and Michalek, however, there are genuine issues of material fact as to their personal involvement in Taylor's transfer. Although it is true that Sullivan and Michalek did not sign any of Taylor's transfer documents, according to Taylor's testimony they conducted the sole interview with Taylor prior to his transfer and their names appeared on the investigative paperwork that culminated in his transfer. This evidence of a causal link between their conduct and Taylor's

6

transfer provides sufficient evidence to establish a prima facie case of retaliation as to those two defendants.

The Court accordingly turns to whether Defendants have proffered a legitimate, non-retaliatory reason for the transfer to Pontiac. The defendants, having failed to file a reply, rest their argument on the fact that they had a valid penological reason for the transfer based on an ongoing investigation into a possible weapon concealed within the Statesville Correctional Center. Taylor, however, has presented evidence calling the validity of this justification into question. Taylor expressly testified that Michalek and Sullivan informed him that they knew the anonymous letter was a lie and that the threatened transfer was based on their knowledge of his prior litigation. The latter point is supported by the testimony of additional witnesses. There is also strong circumstantial evidence calling this justification into question, given that Taylor was transferred on July 2, 2014, but was not formally placed on investigative status until July 3, 2014. Construing this evidence in Taylor's favor, a reasonable jury could conclude that the defendants' stated reason for his transfer is pretextual. Accordingly, the defendants are not entitled to summary judgment on this claim.

As a final matter, the defendants contend that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating defendants' claim of qualified immunity, this court must engage in a two-step analysis. First, the court must determine whether the Taylor's claim states a violation of his constitutional rights. As discussed above, the court has found that Taylor succeeds with this requirement. Second, this court must determine whether Taylor's rights were clearly established at the time the alleged violation occurred. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

A clearly established right is one where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Here, the conduct that Taylor challenges occurred in 2014. Taylor's right not to be transferred in retaliation for First Amendment activity, has been clearly established since at least 1978, when the Seventh Circuit held that it was already "well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983" under similar factual circumstances. *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978). In light of that clear precedent, a reasonable official would have understood that transferring Taylor in retaliation for his prior lawsuit was unlawful. The Court accordingly rejects the defendants' arguments concerning qualified immunity.

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment [156] is granted in part and denied in part. Summary judgment is granted as to Magana, but is denied in all other respects.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: 3/22/2019